**STATE of Missouri ex rel. Joanne B. MAYBERRY, Respondent,**

v.

**The CITY OF ROLLA, Missouri, Appellant.**

No. 21919.

Missouri Court of Appeals, Southern District, Division One.

June 26, 1998.

John D. Beger, Beger & Bushie, LLC, Rolla, for Appellant.

Ronald D. White, Williams, Robinson, Turley, White & Rigler, P.C., Rolla, for Respondent.

Robert L. Hawkins, III, Susan Decker McNarie, Jefferson City, for amicus curiae Missouri Local Government Employees' Retirement System.

CROW, Judge.

Relator, Joanne B. Mayberry ("Mayberry") was the elected municipal judge for the City of Rolla ("City") between July 1, 1975, and May 6, 1996.[1] On May 7, 1996, Mayberry filed a "Petition in Mandamus" against City, praying the trial court to command City to provide her "monthly retirement benefits" under the Missouri Local Government Employees' Retirement System ("LAGERS").[2]

The trial court, deciding the case on a "Stipulation as to Facts" submitted by the parties, held City was obliged to fund retirement pay for Mayberry from LAGERS. The court entered judgment commanding City to pay LAGERS a lump sum sufficient to fund a specified monthly amount.

City brings this appeal from that judgment.

While this appeal was pending, LAGERS moved this court to intervene or, in the alternative, to file an *amicus curiae* brief.[3] This court granted the latter request and took the motion to intervene with the case. The reason for LAGERS's motion to intervene and its effect on this court's decision appear later in this opinion.

Section 70.605.1 [4] proclaims the purpose of LAGERS is, *inter alia*, to provide for retirement or pensioning of officers and employees of any political subdivision of the state.[5] Section 70.610 authorizes the governing body of each political subdivision, by majority vote, to cover its employees under LAGERS. Subsection "(2)" of § 70.610 provides, in pertinent part:

"An employer must cover all its employees...."

Subject to certain exceptions immaterial in this appeal, § 70.600(10) defines "employee" as:

"[A]ny person regularly employed by a political subdivision who receives compensation from the political subdivision for personal services rendered the political subdivision...."

On July 8, 1968, City's governing body adopted Ordinance No. 1413 (effective January 1, 1969). The ordinance provided, *inter alia*, that City elected to cover "all its eligible ... present and future general employees" under LAGERS.

On January 8, 1979 (during Mayberry's fourth year as municipal judge), City's governing body adopted Ordinance No. 2131. It provided, *inter alia*:

"The municipal judge shall be considered holding a part-time position....

....

The municipal court ... shall be subject to the rules of the Circuit Court of which it is a part,[6] and to the rules of the State Supreme Court."

City classifies its general employees as either "full-time" or "part-time." City certifies all full-time employees to LAGERS as

---

1. Mayberry was first elected July 1, 1975, to fill an unexpired term. She was reelected April 6, 1976, for a two-year term, and reelected thereafter at successive elections every two years until expiration of her final term May 6, 1996.

2. LAGERS was created by S.B. 249, Laws of Missouri 1967, pp. 141–58. The LAGERS statutes are codified as §§ 70.600–.755, RSMo 1994, as amended. Twenty-four terms appearing in those statutes are defined in § 70.600, RSMo 1994. Those terms include: "allowance," defined in § 70.600(3); "annuity," defined in § 70.600(4); "pension," defined in § 70.600(17). It is uncertain whether the "monthly retirement benefits" sought by Mayberry are technically an allowance, an annuity, or a pension, hence this opinion refers to such benefits as "retirement pay."

3. Section 70.605.1, RSMo 1994, provides that LAGERS "shall be a body corporate" and "may sue and be sued."

4. Henceforth, references to statutes are to RSMo 1994.

5. "Political subdivision" is defined by § 70.600(19). The parties agree City is a political subdivision as there defined.

6. Judicial Circuit 25. § 478.137.

eligible for retirement benefits and pays contributions to LAGERS for them. City does not certify part-time employees to LAGERS as eligible for retirement benefits and pays no contributions for them.

City classifies full-time and part-time employees as either salaried or hourly. Salaried employees are not required to keep records of the number of hours worked. In contrast, hourly employees are required to keep such records.

From the time Mayberry became municipal judge until 1989, she presided over municipal court sessions every Tuesday and Friday. After the court "computerized its docket" in 1989, she presided over court sessions every Tuesday and alternating Fridays.

During her first twelve years in office, Mayberry maintained office hours as municipal judge Monday through Friday from 8:00 a.m. to 5:00 p.m. During the last nine years of her tenure, Mayberry maintained office hours as municipal judge at both her home and City Hall. During her entire tenure, Mayberry was generally available on an "as needed" basis to defense attorneys, prosecutors, and law enforcement officials, and was called upon as municipal judge at all hours of the day and night by such individuals.

City issued Mayberry—a salaried employee—a "W–2 tax form" each year from 1975 through 1996. City never certified to the board of trustees of LAGERS that Mayberry was entitled to retirement benefits, nor did City ever contribute anything to LAGERS to fund such benefits.

Mayberry's petition averred she was "regularly employed" by City during her tenure as municipal judge, hence she was "entitled to retirement benefits under LAGERS."

City's answer averred Mayberry was not entitled to such benefits because, *inter alia,* she was not "regularly employed by [City] in that [she] was elected ... as Municipal Judge and was periodically re-elected to that position."[7] Furthermore, alleged City, May-

berry "set her own work hours" and was classified by Ordinance No. 2131 (mentioned earlier) as "holding a part-time position."

Prior to the designated trial date, a dispute arose between the parties about a regulation adopted by LAGERS's board of trustees ("Board").[8] The regulation, adopted by Board effective January 8, 1976, is numbered 16 CSR 20–2.010. The stated purpose of the regulation is "to expand on definitions found in section 70.600, RSMo." Paragraph (1)(B) of the regulation provides:

"The term employee shall not include any person:

1. Who is employed in a position normally requiring less than one thousand five hundred (1500) hours of work a year; provided a political subdivision, by witten [sic] certification to the board at the time the employer joins the system, may reduce one thousand five hundred (1500) hours minimum for its employees, which lesser number of hours shall be uniform for all its employees and shall be one thousand two hundred fifty (1250) or one thousand (1000)[.]"

Mayberry filed a motion in limine praying the trial court to bar evidence "in support of an argument" that she was required to have worked a specific number of hours each year to meet the definition of "employee" in § 70.600(10), mentioned earlier. In support of her motion, Mayberry argued that § 70.605.21[9] did not authorize Board to modify the statutory definition of "employee" in § 70.600(10).

The trial court granted Mayberry's motion. The court found Board "was without authority" under § 70.605.21 to adopt 16 CSR 20–2.010(1)(B)1. The court barred evidence in support of an argument that Mayberry was required to have worked not less than 1,500 hours each year to meet the definition of "employee" in § 70.600(10).

7. Footnote 1, *supra.*

8. Section 70.605.21 provides:

   "Subject to the limitations of sections 70.600 to 70.760 [sic], the board shall formulate and

adopt rules and regulations for the government of its own proceedings and *for the administration of the retirement system."* (Emphasis added.)

9. Footnote 8, *supra.*

After the case was submitted (on the stipulation mentioned earlier), the trial court, *sua sponte*, informed counsel for the parties that the court was concerned about whether Mayberry's remedy was this mandamus proceeding or instead an administrative proceeding before Board.

Thereafter, by agreement of the parties, the trial court postponed adjudication until the parties presented the dispute to Board.

Mayberry presented the dispute to Board by filing a petition praying for the same relief she was seeking in the trial court. City responded with a motion to dismiss, asserting Board was "without authority to decide the questions raised by [Mayberry's] Petition."

On August 27, 1997, Board issued an "Order and Decision." It read, in pertinent part:

" ... the Board ... sustains the motion to dismiss of ... City ... for the reason that the Board ... is without sufficient jurisdiction to resolve this particular dispute."

The trial court thereafter entered the judgment referred to in the second paragraph of this opinion. The judgment declares Mayberry is entitled to retirement pay of $278.50 per month and orders City to pay LAGERS $10,089.59 "or such other amount as LAGERS may properly determine" to fund Mayberry's retirement pay.

The first of City's two points relied on is:

"The court erred in sustaining [Mayberry's] motion in limine, finding the Board of Trustees which administers [LAGERS] is without authority to enact 16 CSR 20–2.010(1)(B)–1 and rejecting any ... evidence that [Mayberry] was required to have worked not less than [1,500] hours each year to meet the definition of employee because the regulation was within the Board's grant of authority under section 70.605.21, RSMo[,] to formulate and adopt rules and regulations for the administration of the retirement system; the regula-

tion was reasonable and [Mayberry] did not meet her burden of overcoming the presumption in favor of the regulation."

As reported in the fourth paragraph of this opinion, LAGERS moved this court for leave to intervene in this action. This court, having taken LAGERS's motion with the case, now addresses that issue, as it is germane to City's first point.

■ LAGERS maintains § 507.090.1 and Rule 52.12(a) [10] grant it the right to intervene.

Section 507.090.1 reads, in pertinent part:

"Upon timely application anyone shall be permitted to intervene in an action

(1) ...

(2) When the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action...."

Rule 52.12(a) reads, in pertinent part:

"Upon timely application anyone shall be permitted to intervene in an action: (1) ... (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

LAGERS's hypothesis, as we grasp it, is: (a) the trial court held Board lacked authority to adopt 16 CSR 20–2.010(1)(B)1; (b) neither LAGERS nor Board was aware of that ruling until City raised the issue in its first point in this appeal [11]; (c) this court's ruling on that issue will have "precedential effect" on future LAGERS cases; (d) LAGERS has a right and responsibility to defend its regulations so all employees of local governments covered by LAGERS "will be treated equally [through] predictable, evenly enforced regulation"; (e) neither Mayberry nor City ade-

---

**10.** References to Rules are to Missouri Rules of Civil Procedure (1998).

**11.** An affidavit of LAGERS's lawyer states he received copies of the parties' briefs after they were filed. Neither Mayberry nor City disputes that averment.

quately represented LAGERS's interest in defending the validity of 16 CSR 20–2.010(1)(B)1 in the trial court.

LAGERS's motion to intervene asks this court to (1) grant intervention and (2) reverse the judgment and remand this case to the trial court "for further hearing" on the issue of Board's authority to adopt 16 CSR 20–2.010(1)(B)1.

The first issue we confront in addressing LAGERS's motion to intervene is whether LAGERS meets the requirements for intervention.

■ One has a right to intervene in an action if he satisfies three requirements. He must show: (1) an interest in the property or transaction that is the subject of the action; (2) disposition of the action may as a practical matter impair or impede his ability to protect his interest; (3) his interest is not adequately represented by the existing parties. *State ex rel. Edel v. City of Springfield,* 935 S.W.2d 339, 342[3] (Mo.App. S.D.1996); *McDaniel v. Park Place Care Center, Inc.,* 861 S.W.2d 179, 180 (Mo.App. W.D.1993); *State ex rel. Mercantile Bank of Springfield v. Pinnell,* 804 S.W.2d 63, 65[1] (Mo.App. S.D.1991).

As to requirement 1, we hold LAGERS has an interest in endeavoring to ensure that a regulation adopted by Board is upheld when its validity is challenged in litigation. Here, 16 CSR 20–2.010(1)(B)1 was evidently perceived by Mayberry as an obstacle to her claim against City for retirement pay. As we have seen, she persuaded the trial court to find Board lacked authority under § 70.605.21 to adopt the regulation.

The "subject of the action" in this case is Mayberry's claim against City for retirement pay. If Mayberry is to receive retirement pay, it will come from LAGERS (funded by the lump sum the trial court ordered City to pay LAGERS). If (contrary to the trial court's ruling) 16 CSR 20–2.010(1)(B)1

is valid, Mayberry may be ineligible for the retirement pay she seeks. We infer this possibility spurred Mayberry to challenge the validity of the regulation.

Because the issue of the validity of 16 CSR 20–2.010(1)(B)1 is intertwined with Mayberry's claim against City for retirement pay to be administered by LAGERS, we hold LAGERS has an interest in the transaction that is the subject of this action. Accordingly, LAGERS satisfies requirement 1 for intervention.

As to requirement 2, LAGERS argues that this court's decision on City's first point will have "a direct and immediate effect upon LAGERS by creating a precedent which other courts will follow in finding a LAGERS regulation unlawful." According to LAGERS, disposition of this case without its presence as a party impairs its ability to protect its interest in defending its regulations against attack.

We agree. Although LAGERS has endeavored to defend 16 CSR 20–2.010(1)(B)1 in its *amicus curiae* brief, LAGERS had no opportunity to offer evidence in the trial court demonstrating the reasons for the regulation—evidence that would presumably be more readily available to LAGERS than to Mayberry or City. In this appeal, LAGERS is a captive of the record made by Mayberry and City. That record contains no evidence revealing the reason for the regulation's requirement that an employee perform the hours of work per year specified in the regulation.[12]

We therefore hold LAGERS's ability to defend its regulation would be impaired if we decided City's first point without LAGERS having an opportunity, as a party, to present evidence in support of the regulation. Consequently, LAGERS satisfies requirement 2 for intervention.

As to requirement 3, LAGERS emphasizes that inasmuch as Mayberry—through her

---

12. It is inferable that because of the number of local government employees covered by LAGERS and the administrative cost of operating the system, the retirement pay of an employee who works only a modest number of hours per year would be too small to justify the expense inherent in including such an employee in the system.

LAGERS may be able to present evidence on that subject. If the evidence is persuasive, a court may find 16 CSR 20–2.010(1)(B)1 is within the power conferred on Board by § 70.605.21 (footnote 8 *supra* ) to adopt regulations "for the administration of the retirement system."

motion in limine—challenged the validity of 16 CSR 20–2.010(1)(B)1 in the trial court, Mayberry obviously did not represent LAGERS's interest in defending the regulation.

The record indicates City resisted Mayberry's motion in limine.[13] However, our search of the record reveals nothing presented by City to the trial court in support of the regulation. Furthermore, neither the statement of facts in City's brief nor the argument following City's first point mentions anything presented by City to the trial court in defense of the regulation.

Indeed, as LAGERS points out, although City, by ordinance, classified the municipal judgeship as "a part-time position," an individual can satisfy the 1,500–hours–per–year requirement of 16 CSR 20–2.010(1)(B)1 by working fewer than 40 hours per week. Consequently, says LAGERS, "[A]n individual could be 'part time' employed and still qualify for LAGERS." As LAGERS astutely observes: "This is not an argument which the City would have cared to make."

For the reasons in the three preceding paragraphs, we hold LAGERS's interest in defending the validity of its regulation was not adequately represented in the trial court by the existing parties. Accordingly, LAGERS satisfies requirement 3 for intervention.

■ The next issue we confront in addressing LAGERS's motion to intervene is whether it was timely. Section 507.090.1 and Rule 52.12(a) (both quoted earlier in this opinion) require that an application to intervene be "timely."

In *Frost v. White*, 778 S.W.2d 670 (Mo. App. W.D.1989), an insurance company moved to intervene in the trial court after judgment was entered but before the judgment became final for purpose of appeal. *Id.* at 671. The trial court denied the motion; the insurance company appealed. *Id.*

The appellate court explained that where a proposed intervenor is otherwise entitled to intervene as a matter of right, the issue of timeliness requires the trial court to consider two factors. *Id.* at 673. The first is whether substantial justice mandates allowance of intervention; the second is whether existing parties to the case will be prejudiced if intervention is allowed. *Id.*

Noting that the trial court failed to consider either factor, the appellate court in *Frost* considered both and concluded the insurance company was entitled to intervene. *Id.* at 673–74. The appellate court reversed the judgment and remanded the case to the trial court with a directive to grant the motion to intervene. *Id.* at 674.

In the instant case, as noted earlier in this opinion, LAGERS maintains it was unaware the trial court had held 16 CSR 20–2.010(1)(B)1 invalid until City raised the issue in its first point in this appeal. Although Mayberry filed a petition with Board praying for the same relief she was seeking in the trial court, LAGERS avers Mayberry's petition and City's motion to dismiss gave no indication that the trial court had concluded the regulation was void. Neither Mayberry nor City disputes those averments.

We therefore hold that if, in the instant case, the two factors specified in *Frost, id.* at 673, favor LAGERS, LAGERS should be allowed to intervene even though LAGERS sought to intervene only after the case reached this court.

As to the first factor, we hold substantial justice requires that LAGERS be allowed to intervene, as LAGERS is the agency that will administer whatever retirement pay, if any, Mayberry ultimately receives. It would be unjust for LAGERS to bear that responsibility where the recipient may be ineligible under 16 CSR 20–2.010(1)(B)1 and LAGERS had no opportunity to champion the validity of the regulation in the trial court.

As to the second factor, we find neither Mayberry nor City will be prejudiced if LAGERS is allowed to intervene. As reported earlier in this opinion, the case was submitted to the trial court on stipulated facts, hence there appears to be little danger that relevant evidence will be unavailable on remand.

---

**13.** The trial court's order granting Mayberry's motion in limine recites that the court's finding that Board "was without authority" under § 70.605.21 to adopt 16 CSR 20–2.010(1)(B)1 was made "over the objection of counsel for ... City."

Having found both *Frost* factors favor LAGERS, we hold LAGERS meets all criteria for intervention. However, that does not end our task.

■ There is precedent that an appellate court, in circumstances such as those here, has no authority to permit the addition of parties. *See: State ex rel. Harwood v. Sartorius*, 355 Mo. 837, 198 S.W.2d 690, 698[4] (banc 1946),[14] and *Aetna Life Ins. Co. v. Litteer*, 621 S.W.2d 376, 379[1] (Mo.App. W.D.1981).

Nonetheless, in instances where appellate courts have determined that intervention should be allowed, appellate courts have reversed the judgment and remanded the case to the trial court with a directive to grant an application to intervene if one be filed in that court after remand. *See: Meyer v. Meyer*, 842 S.W.2d 184, 187–90 (Mo.App. E.D.1992), and *Aetna Life*, 621 S.W.2d at 379–80. *Cf. Frost*, 778 S.W.2d at 672–74; *Western Casualty & Surety Co. v. Alley*, 711 S.W.2d 195, 197–98 (Mo.App. S.D.1986). In one case, an appellate court (possibly contrary to the two cases mentioned in the preceding paragraph) went even farther, allowing intervention during appeal and reversing the judgment in part without remand to the trial court. *City of Pacific v. Metro Development Corp.*, 922 S.W.2d 59, 62–65 (Mo.App. E.D.1996).

Having studied the cases identified in the two preceding paragraphs, we conclude the appropriate disposition of the instant appeal is to reverse the judgment and remand the case to the trial court with a directive to permit LAGERS to apply to intervene. The specifics are set forth at the end of this opinion.

■ We recognize LAGERS never moved to intervene in the trial court, and that an appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36[12] (Mo. banc 1982).

However, the trial court was aware from the outset that if it found for Mayberry, she expected her retirement pay to come from LAGERS, as the prayer in her petition asked the trial court, *inter alia*, to compel City to do everything necessary to ensure inclusion of Mayberry under LAGERS, including paying LAGERS "all contributions required to fund her LAGERS pension."

Additionally, when Mayberry, in support of her motion in limine, took the position that § 70.605.21 [15] did not authorize Board to modify the statutory definition of "employee" in § 70.600(10), it was evident that Mayberry was asking the trial court to declare 16 CSR 20–2.010(1)(B)1 invalid. The trial court could have reasonably expected that LAGERS would want the opportunity, as a party, to defend its regulation, particularly inasmuch as City apparently did not undertake that task. Judicially nullifying a 21–year–old regulation (which the General Assembly could have overridden anytime during that period, but did not) is a solemn act, to be undertaken only after hearing both sides of the issue.

Consequently, although no one directly presented to the trial court the issue of whether LAGERS should be a party, the trial court was unquestionably aware of the circumstances in the two preceding paragraphs. Accordingly, the trial court, prior to judgment, had ample opportunity to consider whether LAGERS should be in this suit. Reversing the judgment and granting LAGERS an opportunity to intervene does not ambush the trial court.

■ Furthermore, there is a practical reason that LAGERS should be a party. The judgment ostensibly requires LAGERS, upon receipt from City of the amount necessary to fund Mayberry's retirement pay, to enroll Mayberry as a retiree so "she may begin to draw her monthly pension benefit under LAGERS."

14. The Supreme Court of Missouri departed from *Harwood* in *State ex rel. Malone v. Mummert*, 889 S.W.2d 822 (Mo. banc 1994), an original proceeding in mandamus, by substituting one judge for another as respondent. The Supreme Court justified the substitution by emphasizing that the real parties in interest had fully addressed the issue before it and substitution would spare the parties further expense. *Id.* at 826–27.

15. Footnote 8, *supra.*

Attached to LAGERS's motion to intervene is a letter to its lawyer from Mayberry's lawyer. The letter includes this:

"[I]t is my opinion that if the LAGERS Board objects in some way to the judge's decision, that decision would have no res judicata effect on the Board."

Rule 52.04(a) provides, *inter alia*, that one shall be joined as a party in an action if in his absence complete relief cannot be accorded among those already parties. If the notion of Mayberry's lawyer, quoted above, is correct, complete relief cannot be accorded (if Mayberry ultimately prevails) unless LAGERS is a party. Consequently, under the analysis of Mayberry's lawyer, LAGERS is a necessary party. *See: Kingsley v. Burack*, 536 S.W.2d 7, 12–13 (Mo. banc 1976). Given the circumstances of this case, this court agrees with that analysis.

Failure to join a necessary party is a defect that may be raised at any stage of the proceedings, even on appeal. *Lake Sherwood Estates Association v. Continental Bank & Trust Co.*, 677 S.W.2d 372, 374–75[2] (Mo.App. E.D.1984). The defect warrants reversal. *Id. See also: Bunker R–III School District v. Hodge*, 666 S.W.2d 20, 23–25 (Mo. App. S.D.1984).

The judgment is reversed and the cause is remanded to the trial court. The trial court is directed to grant LAGERS a reasonable time after receiving this court's mandate to apply to intervene per Rule 52.12. If LAGERS fails to apply within the time granted by the trial court, the trial court is directed to order that LAGERS be joined as a necessary party per Rule 52.04. Costs of this appeal are taxed half against Mayberry and half against City.

GARRISON, P.J., and PREWITT, J., concur.