William SCHROFF d/b/a R & S Coatings, Respondent,

v.

David SMART, Jr., et al., Defendants,

TEC, LLC., Appellant,

Northland National Bank, Amicus Curiae.

No. WD 61801.

Missouri Court of Appeals, Western District.

Sept. 16, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 2003.

Application for Transfer Denied Dec. 23, 2003.

Theodore C. Beckett, III, Kansas City, MO, for Appellant.

Eugene J. Twellman, Kansas City, MO, for Respondent.

Leonard L. Wagner, Kansas City, MO, for Defendant.

John R. Shank, Jr., Kansas City, MO, for Amicus Curiae.

Before: HARDWICK, P.J., BRECKENRIDGE and SPINDEN, JJ.

LISA WHITE HARDWICK, Judge.

The circuit court entered summary judgment allowing William Schroff to exercise his contractual right of first refusal to purchase commercial property from David Smart, Jr. Third-party defendant, TEC, L.L.C., appeals the summary judgment, claiming Schroff did not have a valid right of first refusal, and that the court erred in denying a change of judge motion. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

In 1985, William Schroff began operating a business, American Sandblasting & Coating, Inc., at 1211 W. 27th Street in Kansas City, Missouri ("the property"). Schroff leased the property from David Smart, Jr. pursuant to two three-year lease agreements executed in 1985 and 1988.[1] Both leases included a "right of first refusal" provision allowing Schroff to purchase the property if Smart decided to sell it. Schroff continued to occupy the property until 1999, eight years beyond the end of the second lease agreement.

In August 1998, Smart entered into an agreement to sell the property to TEC, L.L.C. Smart did not notify Schroff of his intent to sell or allow Schroff to exercise the right of first refusal. In September 1998, Schroff filed a lawsuit in Jackson County Circuit Court against Smart, seeking specific performance of his contractual right of first refusal to purchase the property. Smart then filed a separate rent and possession action against Schroff in regard to the property.

In January 1999, Schroff and Smart attempted to settle both lawsuits. They presigned dismissal stipulations, which Smart's counsel prematurely filed without the consent of Schroff's counsel. The circuit court thereupon dismissed the specific performance lawsuit and the rent and possession action on January 22, 1999. Schroff promptly filed a motion to set aside the dismissal of his specific performance action on January 27, 1999.

While the motion to set aside was pending, Smart closed his sale of the property to TEC on February 9, 1999. (S.L.F.58) Pursuant to the real estate sales agreement, TEC acquired the property by quit claim deed and subject to the claims of Schroff. The agreement further provided that TEC would indemnify and hold Smart harmless from any claims related to the property. TEC paid Smart the agreed upon purchase price of $160,000. TEC's purchase was financed by Northland National Bank, which acquired a security interest in the property.

On May 4, 1999, the circuit court granted Schroff's motion to set aside the dismissal of the specific performance lawsuit. Upon reinstatement of the lawsuit, Smart therein filed a Third–Party Petition against TEC seeking to enforce the indemnity and hold harmless provisions of the real estate sales agreement.

On May 25, 2000, Schroff filed a Motion for Summary Judgment on his specific performance claim against Smart. After full briefing by the parties in the lawsuit, including the third-party defendant TEC, the circuit court granted summary judgment and held that Schroff had an enforceable right of first refusal to purchase the property. The court ordered Smart to sell the property to Schroff within forty-five

---

1. Schroff signed the lease agreements on behalf of American Sandblasting & Coating, of which he was the sole shareholder, officer, and director. When the assets of American Sandblasting & Coating were distributed in 1990, Schroff, as the sole shareholder, received the forfeited corporation's interest in the lease agreement.

days *if* Schroff was able to pay the purchase price of $160,000. The court further ordered that any other sales or conveyances of the property since 1985 (when Schroff received his contractual right of first refusal) were declared "null and void."

TEC appealed the summary judgment. We dismissed this prior appeal because the summary judgment was a conditional order that was not a final judgment for purposes of appeal.[2] *Schroff v. Smart,* 73 S.W.3d 28 (Mo.App. W.D.2002). On July 3, 2002, the circuit court entered a final judgment[3] transferring the property to Schroff based on his payment of the $160,000 purchase price to Smart. The final judgment also declared null and void all other sales or conveyances of the property occurring since 1985.

TEC appeals this final judgment, raising ten points of error. Schroff has moved to dismiss the appeal on grounds that TEC is not an aggrieved party and, therefore, lacks standing to challenge the summary judgment under Section 512.020 R.S.Mo. 2000.[4] Alternatively, Schroff seeks dismissal of Points I through IX, wherein TEC contends the circuit court erred in granting specific performance because Schroff did not have a valid right of first refusal under the lease agreement with Smart. Schroff argues all nine points must be dismissed because TEC has no standing to challenge the enforceability of a lease agreement to which it was not a party. Schroff has also filed a motion to strike TEC's Points IX and X due to violations of Rule 84.04.

Northland National Bank has filed a Motion to Intervene in this appeal based on its security interest in the property.

## MOTION TO DISMISS APPEAL

■ The right to appeal is established by Section 512.020, which provides in relevant part:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited ... may take his appeal to any court having appellate jurisdiction from ... any final judgment.

A party must be "aggrieved" by the judgment below to have any right to appeal. *Calarosa v. Stowell,* 32 S.W.3d 138, 143 (Mo.App. W.D.2000). An aggrieved party is one who suffers from an infringement or denial of legal rights. *Jackson County Bd. of Election Comm'rs v. Paluka,* 13 S.W.3d 684, 687–88 (Mo.App. W.D.2000). The judgment in question must operate directly and prejudicially on the party's personal or property rights or interests and such effect must be immediate and not merely a possible remote consequence. *Calarosa,* 32 S.W.3d at 143.

Schroff contends TEC has no standing to appeal because it was not a "party ... aggrieved" by the circuit court's summary judgment, as required by Section 512.020. He points out that TEC was not a party to the specific performance claim on which judgment was rendered. *Oberhellmann v. Oberhellmann,* 950 S.W.2d 487, 488 (Mo. App. E.D.1997) ("only a party to a suit

---

2. In the prior appeal, we held "[t]he order for Smart to convey the property is conditioned 'upon' Schroff's payment of the purchase price [within 45 days] ... it was a conditional order that was not final for purposes of appeal." *Schroff,* 73 S.W.3d at 31.

3. Although the third-party petition claim remained pending, the circuit court granted final judgment on Schroff's specific perform-

ance claim and certified that claim for appeal by expressly declaring "there is no just reason for delay." Rule 74.01(b).

4. Schroff filed a similar motion challenging TEC's standing in the prior appeal. The motion was not addressed because we dismissed the prior appeal for lack of a final judgment. *Schroff,* at 29, n. 2.

may appeal"). He further argues that TEC was not a party to the lease contract, which gave Schroff a right to purchase the subject property, and, thus, TEC could not be aggrieved by court's enforcement of the contract. *Stephens v. Brekke*, 977 S.W.2d 87, 94 (Mo.App. S.D.1998) (non-parties to a contract "lack standing to question the contract").

■ This court has recognized that the determination of whether an entity is an aggrieved party depends not on the application of a precise definition or formula but rather on "the circumstances of the particular situation at hand." *Bydalek v. Brines*, 29 S.W.3d 848, 852 (Mo.App. S.D. 2000). A party to a lawsuit may be aggrieved even when it was not a named party on the claim upon which judgment was rendered. *Id.* at 852–53 (counterclaim defendants, who were joined after action was initiated, were "aggrieved parties" who had right to appeal the verdict in favor of original defendants against original plaintiffs). The right to appeal "should be liberally construed as appeals are favored in the law. Where doubt exists as to the right of appeal, it should be resolved in favor of that right." *Id.* at 852.

Our review of the procedural history of the underlying lawsuit and the language of the final judgment indicates that TEC is an aggrieved party within the meaning of Section 512.020. In his First Amended Petition seeking specific performance, Schroff alleged Smart had improperly sold the subject property to a "Third Party," TEC. The petition requested the court to "order that the Third Party has no interest in the [p]roperty." Schroff sought this relief even though he did not name TEC as

a party in the lawsuit. Smart subsequently filed a Third–Party Petition, arising out of allegations in the specific performance action and naming TEC as a third-party defendant in the lawsuit. Although TEC was never expressly named as a party on the specific performance claim, it is beyond dispute that Schroff sought relief against TEC on that claim and that TEC was a party in the lawsuit, albeit a third-party defendant.

The court's final judgment granted the relief specifically requested by Schroff. The court declared "null and void" all sales and transfers of the property occurring after 1985. This order extinguished TEC's ownership interest in the property. Because TEC had paid $160,000 and obtained title to the property in February 1999, it is clear that TEC suffered a denial of legal rights as a result of the court's order. The fact that TEC acquired the property subject to Schroff's claims does not diminish the reality that TEC's interest in the property was immediately and adversely affected by the court's ruling. The judgment "operate[d] prejudicially and directly" on TEC's property rights and did not invoke a "possible remote consequence." *Calarosa*, 32 S.W.3d at 143. We deny the motion to dismiss the appeal because TEC is a party aggrieved by the judgment.

## MOTION TO DISMISS POINTS I THROUGH IX

■ In Points I through IX of its appeal, TEC contends the court erred in granting the specific performance relief because Schroff did not have an enforceable right of first refusal under the lease agreement.[5] Schroff has moved to dismiss

---

**5.** In Points I through VIII, TEC argues Schroff was an assignee under the lease agreement and did not acquire the right of first refusal because: (1) Schroff did not sign the lease agreement in his individual capacity; (2) Schroff was not a party to the lease; (3)

the second term of the lease expired in 1991; (4) the lease was not assignable without the lessee's written consent as required by Section 441.030; (5) there was no written assignment of the lease to Schroff as required by Section 432.060; (6) the original lessee was a

these points because they all relate to the court's interpretation and enforcement of a contract to which TEC indisputably was not a party. As a non-party, TEC lacks standing to question the validity of a contract between Schroff and Smart. *Stephens,* 977 S.W.2d at 94.

We have already determined that TEC has standing to appeal the summary judgment as a whole because the final judgment declared "null and void" TEC's property rights. However, Points I through IX of the appeal do not address that portion of the judgment which directly aggrieved TEC. We agree the nine points must be dismissed because TEC is an outsider to the lease agreement and cannot challenge the contract's validity. *Id.*

In *Stephens v. Brekke,* 977 S.W.2d 87, a seller brought a quiet title action to resolve a dispute involving two contracts for the sale of a single piece of property. The trial court determined that the seller's contract with the second prospective purchasers, the Brekkes, was subject to the seller's contract with the first prospective purchasers, the Robertsons. *Id.* at 92. The Brekkes argued on appeal that the first contract between the seller and the Robertsons was unenforceable. Because the Brekkes were not parties to the first contract, the court found "they lack[ed] standing to question the contract between plaintiffs and Mr. & Mrs. Robertson." *Id.* at 94.

TEC does not dispute the direct applicability of the *Stephens* holding to the issues raised in Points I through IX of this appeal. Nor has TEC presented any author-ity to establish its right to challenge the enforcement of a contract to which it was not a party. Points I through IX are dismissed because TEC lacks standing to appeal the specific performance relief granted to Schroff under the lease agreement.

### MOTION TO INTERVENE

■ Northland National Bank has moved to intervene in this appeal pursuant to Rule 52.12.[6] The Bank seeks to challenge the circuit court's implicit declaration that Smart's conveyance of the subject property to TEC in 1999 was null and void. The Bank asserts it is a necessary party to any appeal of this declaration because it financed TEC's purchase and thereby holds a security interest in the property.

■ To intervene as a matter of right under Rule 52.12, a movant must demonstrate: (1) an interest in the property that is the subject of the action; (2) disposition of the action may impair or impede the movant's ability to protect the property interest; and (3) the movant's interest is not adequately represented by existing parties. *State ex rel. Mayberry v. City of Rolla,* 970 S.W.2d 901, 906 (Mo.App. S.D. 1998). The instant intervention motion fails to meet the second requirement because the Bank can not demonstrate that the disposition of this appeal will adversely affect the Bank's ability to protect its property interest.

As noted *supra,* TEC has not raised any issue in this appeal to challenge the circuit court's nullification of its property rights.

---

forfeited corporation and Schroff failed to bring suit in the name of the statutory trustee; (7) the lease provides that assignees do not acquire any rights; and (8) Schroff was in default of the lease because he filed bankruptcy. In Point IX, TEC argues the court could not enforce Schroff's right of first refusal by allowing him to purchase the property be-cause Smart no longer owned the property, having sold it to TEC. TEC contends the proper remedy *under the contract* was to require Smart to pay damages to Schroff for breach of the lease agreement.

6. All rule citations are to the Missouri Rules of Civil Procedure (2003).

The only issues on appeal address the validity of the lease agreement between Schroff and Smart (which have already been dismissed) and the propriety of the denial of TEC's change of judge application. None of our rulings will address TEC's claim of ownership in the property or the circuit court's finding that the 1999 conveyance to TEC was null and void. Thus, the issue on which the Bank seeks to intervene will not be considered in this proceeding.

The Bank's interest in this matter is wholly derived from TEC's acquisition and financing of the property. The Bank would be entitled to seek relief against TEC if there is a default on the note or loss of security. The motion to intervene is denied because the issues decided in this appeal will not impair or impede the Bank's ability to protect its security interest in the property.

## ISSUE ON APPEAL

■ The only remaining issue for appeal is Point X of TEC's brief. Schroff has moved to strike this point for failure to comply with the requirements for "Points Relied On" in Rule 84.04(d)(1).[7] In Point X, TEC provides the following Point Relied On:

THE TRIAL COURT ERRED IN DENYING TEC'S APPLICATION FOR CHANGE OF JUDGE BECAUSE MO.R. CIV.P. 51.05(A) REQUIRES A TRIAL JUDGE TO GRANT A TIMELY APPLICATION FILED UNDER RULE 51.05.

The point is technically deficient in that it does not explain why, in the context of the case, the circuit court's ruling constitutes reversible error. Rule 84.04(d)(1)(C). Despite this deficiency, it is apparent TEC seeks to challenge the denial of its change of judge application based on the circuit court's alleged failure to comply with Rule

51.05. We exercise discretion to review this point because the inartful drafting of the Point Relied On does not impede our disposition on the merits. *Geiersbach v. Blue Cross/Blue Shield,* 58 S.W.3d 636, 639 (Mo.App. W.D.2001). The motion to strike is denied.

Associate Circuit Court Judge Anthony Romano was designated as the trial judge in the underlying case in November 1998. Judge Romano entered the final judgment, for purposes of this appeal, on July 3, 2002. One week later, on July 10, Judge Romano retired from the circuit court but was immediately reassigned to his docket, as a senior judge, by the presiding judge. TEC filed an Application for Change of Judge on July 31, 2002. Judge Romano denied the application as "untimely" and retained jurisdiction to address the motions and claims left pending after the entry of summary judgment on Schroff's specific performance claim.

On appeal, TEC contends the denial was improper because Rule 51.05 requires a court to grant an application for change of judge "filed within … thirty days from the designation of the trial judge." TEC argues that Judge Romano's reassignment to his docket on July 10, 2002, constituted a "designation" that allowed the filing of a change of judge application. TEC contends the court had no discretion to deny the application under Rule 51.05, and Judge Romano lost jurisdiction over the case on July 31, 2003, when the application was filed.

We need not determine whether Judge Romano's reassignment was a new "designation" within the meaning of Rule 51.05 because this issue did not arise until after final judgment was entered for purposes of this appeal. TEC appeals from the judg-

---

**7.** We will not address Schroff's Motion to Strike regarding Point IX in light of our dismissal of that point, *supra.*

ment entered by Judge Romano on July 3, 2002. Although the lawsuit thereafter remained pending on other post-judgment motions and claims related to the Third-Party Petition, this appeal relates only to the judgment rendered one week before Judge Romano's retirement and more than three weeks before TEC's change of judge application was filed. There is no dispute that Judge Romano had jurisdiction over the case at the time he entered the subject judgment. Point X is denied.

The judgment of the circuit court is affirmed.

All concur.