# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **ROCKING H. TRUCKING, LLC AND JOHN PAYNE HARRISON, IV,** | **WD77733** |
| **Respondents,** | **OPINION FILED:** |
| **v.** | **APRIL 14, 2015** |
| **H.B.I.C., LLC MICHELLE ALDERSON AND DAVID FENTON, D.V.M.,** | |
| **Appellants.** | |

**Appeal from the Circuit Court of Boone County, Missouri
The Honorable Jodie C. Asel, Judge**

**Before Division Two: Anthony Rex Gabbert, PJ.,  Karen King Mitchell, J. and
Mary Rhodes Russell, Special Judge.**

H.B.I.C., LLC (HBIC), Michelle Alderson (Alderson), and David Fenton (Fenton)[1]

appeal the circuit court's judgment finding Rocking H. Trucking, LLC (Rocking) and John Payne

Harrison IV (Harrison)[2] entitled to immediate possession of certain trucks and trailers held by

Appellants, damages for a truck and trailer that had been destroyed while in the possession of

Appellants, and lost income that Respondents could have generated if Appellants had not denied

them possession of the trucks and trailers.  Appellants assert three points on appeal.  First,

Appellants contend that the circuit court erred in entering judgment for replevin because it was

---

[1]HBIC, Alderson, and Fenton will be collectively referenced as "Appellants."

[2]Rocking and Harrison will be collectively referenced as "Respondents."

against the weight of the evidence and misapplied the law in that plaintiff Harrison's testimony was not credible with regard to being sole owner of Rocking and plaintiff Rocking did not establish its right to possession because the trucks and trailers were titled in the name of HBIC. Second,[3] Appellants contend that the circuit court erred in: (a) entering judgment against Fenton and Alderson as individuals in Count I, (b) entering judgment for plaintiffs in Count II generally, and (c) failing to name who the judgment was against in Count II. Appellants claim there was no substantial evidence to support the judgment, it was against the weight of the evidence, and misapplied the law because the trucks in question were originally titled to Rocking and transferred and titled to HBIC, the plaintiffs did not ask the court to pierce the corporate veil, the plaintiffs made no allegations against Fenton with respect to ownership of HBIC, and it was uncontroverted that Alderson was the sole member of HBIC. Third, Appellants contend that the circuit court erred in awarding Harrison individual damages and lost income because the court erroneously applied the law of corporations in that Rocking was a limited liability company in good standing, the court found Rocking to be the rightful owner of the disputed property, and a limited liability company is a separate entity. We affirm.

On March 19, 2012, Respondents filed a First Amended Petition for Replevin and Damages or in the Alternative Promissory Estoppel and Fraud. Therein, Respondents sought the return of various trucks and trailers that had been transferred from Rocking to HBIC, as well as damages and lost income. Alderson filed a counterclaim against Harrison for unpaid earnings associated with an alleged promise to share with her the proceeds of a settlement. Alderson claimed that she assisted Harrison in obtaining a settlement for a bad cattle vaccine and Harrison had promised to pay her half of any settlement in excess of $100,000.

---

[3]For the ease of the reader, we have divided Appellants' lengthy and multifarious point into subparts.

**Evidence Supporting the Trial Court's Judgment**

In the light most favorable to the court's judgment, the evidence at trial showed that Harrison met Fenton in 2002 or 2003 when both he and Fenton were involved in "backgrounding" cattle. Harrison testified that "backgrounding" is a business that "takes lightweight cattle, heals them up, doctors them, and tries to get them straightened out and make loads" to either sell or send to feed. When Harrison and Fenton met, Fenton was retiring as a veterinarian for the Columbia Livestock Market but owned a backgrounding lot in Columbia. Harrison and his father owned a livestock market called Callaway Livestock. Harrison and Fenton decided to start backgrounding cattle together. Their business arrangement involved Fenton's lot receiving the backgrounding fees, and Harrison paying for the medicine, the feed, and Fenton's yardage. Harrison described "yardage" as "a certain amount per head per day." Fenton received yardage and Harrison sold the cattle at his livestock market and received a percentage of what the cattle brought at sale.

Harrison and Fenton backgrounded cattle together for several years and, during that time, they developed a close friendship. At one point, Harrison loaned Fenton $100,000 for a piece of property in Columbia that Fenton desired to purchase but was unable to obtain a loan for. Fenton never repaid Harrison. With regard to the backgrounding business, Harrison lost approximately $350,000. He testified that the loss was no one's fault, "[w]e just hit a bad cattle market, a decline for four years, and cattle just all lost its money." Nevertheless, he and Fenton remained close friends. Harrison testified that he was holding all of the debt on the cattle and at some point it became obvious that there was no way to earn back the money he had lost backgrounding. He and Fenton then began transporting cattle as a way to recoup the money. Harrison had a truck and Fenton had a trailer and drivers were paid to transport the cattle.

Harrison testified that, because he was in the livestock market in Kingdom City, he had an "in" with regard to the business of hauling cattle. He testified: "That's kind of why we got in the trucking business, because I always had kind of an inside on who was going to need a truck that night, and I would kind of get them started." Harrison testified that the trucking operation was important to Fenton as well because he had a half interest on the loss on the cattle.

In the first year of trucking cattle, Harrison dispatched and Fenton had very little involvement. Over time, the operation grew and Fenton took over dispatching and Harrison took care of accounting. Harrison created Rocking H. Trucking, LLC, for the business in 2008. Harrison was the sole member of the LLC. Money earned from the business was used to purchase additional trucks and trailers for expansion of the business. Neither Harrison nor Fenton took a salary from the business. Harrison testified that, as sole member of Rocking, he legally owned the trucks and trailers that were titled under that LLC.

In late 2010, Harrison hired attorney Sue Crane to represent him with regard to a Department of Transportation (DOT) case where Rocking was facing large fines for regulatory issues. Crane testified at trial that she, alone, was instrumental in resolving the situation with the DOT and the fines against Rocking were ultimately dropped. Meanwhile, however, Crane learned from Harrison that appellant Alderson, Fenton's daughter, had convinced Harrison that Rocking had been "red flagged" by the DOT and that, to help alleviate the DOT's scrutiny Harrison should create a new company for himself with a new name and move the trucks into the new company.

With regard to Alderson's involvement, Harrison testified that, around the time the issues with the DOT came about, Alderson took over as Rocking's bookkeeper. He testified that Alderson was very smart and had a college education and Fenton wanted something for her to

4

work into to have a company down the road. Harrison considered Alderson a very good friend. Harrison put Alderson in charge of DOT compliance and trusted her recommendations in that regard. When Alderson suggested that the Rocking name be changed to avoid DOT scrutiny, Harrison did what she asked and signed what she asked him to sign. As a result, the trucks were transferred to a new entity named HBIC, LLC. Harrison said that he thought that the "H" in HBIC stood for Harrison.

Alderson told Harrison that the titles to the trucks and trailers needed to be transferred from Rocking to the new company and Alderson gave Harrison a warranty bill of sale to sign. The bank, however, held some of the titles because they were being used for collateral. A meeting was held with the bankers and in that meeting Alderson agreed that once the bank released the titles and they were moved to HBIC, she would return them to the bank as collateral. Alderson never returned the titles and when the bank officers began investigating they notified Harrison that his name was not on the new company at all. Harrison testified that when he asked Fenton about this, Fenton told him that Harrison had given the trucks to Alderson. Harrison testified that he would not have simply gifted the trucks and trailers to Alderson when he and Fenton were "in debt over our heads. Who in their right mind would do something like that?" Harrison testified that, he later learned that Alderson had created HBIC six months prior to any of Rocking's assets being transferred.

Attorney Crane testified that she telephoned Alderson to find out what was going on. In her conversation with Alderson, Alderson never suggested that the new company, HBIC, was not Harrison's company. Alderson never suggested that Harrison had given his company, Rocking, to Alderson or that he had given the trucks and trailers that were owned by Rocking to Alderson. Alderson told Crane that she created a new company for Harrison so that a new name would be

placed on the trucks and they would not be so easily identifiable by the DOT. Alderson indicated that the trucks were merely being transferred from Harrison's first company to Harrison's second company.

Harrison's certified public accountant, David Shively, testified that he prepared the tax returns for Rocking. Shively testified that the tax returns listed the trucks as 100% owned by Harrison because, as the sole member of Rocking, the vehicles passed through to his personal return.

Marc Kaiser, a former employee of The Callaway Bank in Fulton who was involved with releasing the bank liens, testified that Alderson told bank officials that, after the bank released the liens on the property, the property would be retitled under the new business's name, and then the bank could put the liens back on the trucks and trailers under new documents. Kristen Gibbs, another bank officer who was involved in the process of releasing the liens on the trucks, testified similarly and testified that Alderson never returned the bank liens to the titles. She testified that, when she and Kaiser investigated, they found that only Alderson was listed as HBIC's owner. She then contacted Harrison to advise him of this and he indicated to her that there had to be a mistake.

**Fenton's Testimony**

Fenton testified at trial. Fenton testified that he recalled in 2008 that the trucking business was becoming large enough that he and Harrison thought a "structured company" was necessary. Fenton testified that he was busy at the time the corporation was created and asked Harrison to sign Fenton's name to the LLC, and always believed his name was included in the LLC and that he owned half of Rocking. However, he also testified that he was aware that the

6

tax returns for Rocking showed that all of Rocking's depreciation and all of Rocking's income were attributed to Harrison. Fenton testified that he approved of this because he did not need tax losses. He testified that he was never at risk with regard to the trucking business and that all of the liability for losses was carried by Harrison, the legal owner of Rocking, because Fenton did not have any ownership interest that put him at risk. He testified that he did nothing to put himself into an ownership position with Rocking. Fenton acknowledged significant backgrounding business losses but denied that the trucking business was intended to make up for the cattle losses.

Fenton testified that Harrison gifted the trucking business to Alderson. He testified that one day Fenton met with Harrison and Harrison's father, as well as David Means, all who owned Callaway Livestock. Fenton testified that he owed Callaway Livestock money for cattle that he had previously purchased and was discussing how he was going to repay Callaway Livestock. He testified that Harrison then "just spoke out and said, 'I don't really contribute anything to the trucking company anyway. I'm just going to let her have that' or 'let you have that.'" Fenton testified that he thought to himself that that was quite a gesture and that he told his daughter: "If you get this pulled off, it's going to be, you know, really spectacular that he gives you his half of the company." Fenton testified that he believed that, because Fenton owed Harrison a "significant amount of money," Harrison gave Fenton's daughter the assets of Rocking as an incentive for Fenton to pay back what he owed.

**Alderson's Testimony**

Alderson testified that she formed HBIC because she, Harrison, and Fenton had discussed forming a new company. She testified that HBIC stands for "Head Bitch in Charge." She testified that she is the sole member of that company. She testified that HBIC has titles to the

7

vehicles that were in the warranty bill of sale signed by Harrison. She testified that she first started assisting with the federal audit of Rocking because Rocking's bookkeeper had quit and there was no one else available to help. She testified that, along with looking into what was necessary to remain in compliance with DOT regulations, she also tried to keep track of the books, tried to help with billing, and tried to help in whatever way she could to make Harrison and Fenton's lives easier. Alderson testified that she was present with the bankers and heard them discuss that the titles were being transferred from one company of Harrison's to another company of Harrison's, but did not correct them and tell them that the titles were actually being transferred to her own company. She testified that she was told by Harrison to just agree with whatever the bankers said. When Alderson was asked on direct examination if there was any question in her mind that the warranty bill of sale that Harrison signed completely conveyed to her all of Harrison's right, title, and interest in the trucks and trailers, she replied, "He just took it as what it said." She testified that she did not threaten Harrison in any way to effectuate the transfer and was grateful to him for doing it.

**Trial Court's Judgment**

On February 27, 2013, the circuit court entered a judgment which was appealed to this court. This court concluded that the judgment was not final because the circuit court had failed to enter judgment regarding two of the four counts in the Petitioners' petition. *Rocking H. Trucking, LLC, et al. v. H.B.I.C., LLC, et al.*, 427 S.W.3d 891 (Mo. App. 2014). We remanded the matter back to the trial court. *Id.* On July 7, 2014, the circuit court entered an Amended Final Judgment. Therein the court found in Count I that "Plaintiff Rocking H Trucking LLC is the rightful owner and shall have judgment against the defendants and that Plaintiffs' are entitled to immediate possession" of the various trucks and trailers that had been transferred to HBIC

8

and/or damages for property that had been destroyed and for which replevin was unavailable. Regarding Count II, the court entered judgment for Plaintiffs in the amount of $200,416.67 for lost income with statutory interest from the date of judgment. The court dismissed Counts III and IV. The court entered judgment for Alderson against Harrison in the amount of $134,865.53 on Alderson's counterclaim for unpaid settlement earnings. HBIC, Alderson, and Fenton appeal.

**Standard of Review**

Our standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 122 (Mo. App. 2013). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 122-123. We view the evidence and all reasonable inferences in the light most favorable to the court's judgment. *Id.* "[W]here the resolution of conflicting testimony is required to determine the merits of an against-the-weight-of-the-evidence argument, we defer to the trial court's credibility determinations[.]" *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. 2010).

**Point I**

In Appellants' first point on appeal, Appellants contend that the circuit court erred in entering judgment for replevin because it was against the weight of the evidence and misapplied the law in that plaintiff Harrison's testimony was not credible with regard to he being the sole owner of Rocking and plaintiff Rocking did not establish its right to possession because the trucks and trailers were titled in the name of HBIC.[4] Appellants contend that no certificates of

---

[4]Appellants' first point is multifarious. Appellants combine into the same point relied on an against-the-weight-of-the-evidence challenge and a misapplication-of-law challenge. These are distinct claims that must appear in separate points relied on in the Appellants' brief to be preserved for appellate review. *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014); Rule 84.04. Nevertheless, we gratuitously address the merits of Appellants' point.

ownership were ever issued and no operating agreement for Rocking was ever prepared. Appellants argue that Harrison contradicted himself at trial by testifying that he was the sole owner of Rocking, that his wife was half owner, and that the bank was half owner. Appellants argue that Harrison also testified in his marital dissolution case that he owned one half interest in Rocking and in a deposition that Fenton was half owner.

Upon review of the record, we find that Appellants have failed to prove that the court's judgment, finding Harrison and Rocking entitled to possession of the property that was transferred from Rocking and into HBIC, was against the weight of the evidence. In bringing an against-the-weight-of-the-evidence challenge it is necessary for Appellants to:

> (1) identify a challenged factual proposition necessary to sustain the judgment; (2) identify all of the favorable evidence supporting that position; (3) identify contrary evidence, subject to the trial court's credibility determinations, explicit or implicit; and (4) prove in light of the whole record that the supporting evidence, when considered along with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition.

*Sauvain v. Acceptance Indem. Ins. Co.*, 437 S.W.3d 296, 304 (Mo. App. 2014). Appellants challenge the factual proposition that Harrison is the sole owner of Rocking and point to contrary evidence that Appellants believe support that he was not. Appellants argue that "[t]he credible evidence in this case supports that Harrison and Fenton were partners in Rocking H. As such Fenton had the right of possession." Yet, Appellants fail to acknowledge the favorable evidence in the record that supports Harrison being the sole owner of Rocking and fail to explain how this favorable evidence is so lacking in probative value that the court could not have reasonably believed it.

Harrison testified that he was the sole owner of Rocking. The attorney who drafted the paperwork to establish Rocking as an LLC testified that Harrison was the sole member of

10

Rocking. Harrison's accountant testified that, because Harrison was the sole member of Rocking, all of Rocking's earnings and losses appeared on Harrison's personal income tax returns. Although Appellant Fenton testified that he always considered himself half owner of Rocking, he also testified that he was never liable for losses with regard to the trucking business. He testified that all of the risk was carried by Harrison, the legal owner of Rocking, and that Fenton did not have any ownership interest that put him at risk. He testified that he did nothing to put himself into an ownership position with Rocking. Fenton acknowledged that he had partnered with Harrison in backgrounding cattle, that the business took heavy losses, and that Harrison solely absorbed those losses. A hallmark of a true partnership is an agreement to share losses as well as profits. *See Clark v. Francis*, 422 S.W.3d 369, 378-379 (Mo. App. 2013). Although it is undisputed that, at the time of trial, the property that was formerly titled to Rocking had been transferred to HBIC, Harrison testified that he only transferred the property under the erroneous belief that he owned HBIC.

"[T]he gist of replevin action is to test plaintiff's right to immediate possession of the chattels and defendant's wrongful detention. Proof of title or ownership is not an inherent element of the action, although it might incidentally become involved." *Phillips v. Ockel*, 609 S.W.2d 228, 231 (Mo. App. 1980). Given the evidence, Appellants fail to prove that the court could not have reasonably believed Harrison to be the sole owner of Rocking and that Harrison and Rocking were entitled to possession of the property previously held by Rocking and

11

erroneously transferred to HBIC.  Point one is denied.

## Point II

Appellants submit their second point on appeal as follows:

The trial court erred in entering judgment for the plaintiffs against David Fenton and Michelle Alderson, as individuals, in Count I and also in entering judgment for plaintiffs in Count II where the court failed to rule who the judgment was against because there was no substantial evidence to support the award, was against the weight of the evidence, and misapplied the law in that the trucks in question were originally titled in Rocking H Trucking, LLC and transferred to and titled in H.B.I.C., LLC and the plaintiffs did not ask the court in pleadings or at trial to pierce the corporate veil and did not adduce evidence to support the award against David Fenton and Michelle Alderson as individuals; and plaintiffs in their pleadings made no allegations against Fenton in respect to ownership of H.B.I.C. and the evidence was uncontroverted that Alderson was the sole member of H.B.I.C.  In addition, on Count II, the trial court did not rule which defendant or defendants whom the judgment was against.

We note that Appellants' second point is multifarious.  Appellants combine into the same point relied on a substantial-evidence challenge, an against-the-weight-of-the-evidence challenge, and a misapplication-of-law challenge.  These are distinct claims that must appear in separate points relied on in the Appellants' brief to be preserved for appellate review.  *Ivie*, 439 S.W.3d at 199 n.11; Rule 84.04.  Further, Appellants make these three claims regarding two distinct issues – that the court erred in its judgment regarding Count I, the replevin count, and that the court erred in its judgment regarding Count II, the accounting and damages count.  Additionally, in the same point, Appellants challenge the form of the judgment by alleging that the court failed to specify which defendant or defendants the judgment was against.

We find that, pursuant to Rule 84.04 and Rule 78.07, Appellants have failed to preserve the issues set forth in their second point on appeal.  With regard to Appellants' challenge to the form of judgment, we decline to exercise our discretion to gratuitously review the claim.  The record reveals that Appellants never asserted this claim with the trial court pursuant to Rule

12

78.07(c). Rule 78.07(c) requires that all allegations of error relating to the form or language of the judgment must be raised in a motion to amend the judgment in order to be preserved for appellate review. With regard to Appellants' other claims, we gratuitously note that it is clear from the judgment that the court ruled in favor of Rocking and Harrison and against HBIC, Alderson, and Fenton on both counts. Although Appellants argue that the evidence does not support judgments against Alderson and Fenton as individuals, we note that, in Appellants' Answer to Respondents' First Amended Petition, Alderson admits that HBIC and Alderson had complete control over the property in dispute and any income derived from that property. Thus, Alderson cannot now claim that the court had no authority to order her to return that property, to pay damages for the part of that property that was destroyed, or to pay lost income that resulted from her retention of that property.

Similarly, although Respondents prayed in the First Amended Petition that the court order all defendants to return the disputed property, Fenton never contended, either in his answer to the petition or at trial, that he did not have possession of the property. He contended at trial that he had an undivided one half interest in Rocking's property and that Harrison transferred only Harrison's interest in Rocking to Alderson when the bill of sale was executed. He also testified at trial that, after the property was placed into HBIC, both he and Alderson continued on with the trucking business and purchased other pieces of equipment that were placed into HBIC. He testified that, since the transfer of the assets from Rocking to HBIC, he had personally contributed in excess of $200,000 to HBIC to keep it running. He also testified that he had obtained a loan from his uncle to support HBIC. On appeal, Fenton maintains in his first point that, as a partner with Harrison in Rocking, Fenton has the right to possess the property.

13

Thus, as Fenton never denied having possession of the property, and because a reasonable inference can be drawn from the evidence that Fenton shared possession and control of the property through his substantial ongoing involvement in HBIC's affairs, the court did not err in entering judgment against him in both Counts I and II. Point two is denied.

**Point III**

In Appellants' third point on appeal, Appellants contend that the circuit court erred in awarding both Rocking and Harrison damages and lost income because the court erroneously applied the law of corporations in that Rocking was a limited liability company in good standing, the court found Rocking to be the rightful owner of the property, a limited liability company is a separate entity, and the court awarded damages and lost income to Harrison individually as well as Rocking. Appellants argue that, if this court affirms Rocking to be the rightful owner, then damages and lost income accrue to Rocking, not Harrison.[5]

We find that Appellants have no standing to bring this claim. Pursuant to Section 512.020, "[a] party must be 'aggrieved' by the judgment below to have any right to appeal." *Schroff v. Smart*, 120 S.W.3d 751, 754 (Mo. App. 2003). "An aggrieved party is one who suffers from an infringement or denial of legal rights." *Id.* "The judgment in question must operate directly and prejudicially on the party's personal or property rights or interests and such effect must be immediate and not merely a possible remote consequence." *Id.*

---

[5]We note that Appellants never alleged that Harrison was without the individual capacity to sue for replevin and associated damages. Rule 55.27(g)(1) mandates that a challenge to a plaintiff's legal capacity to sue is waived if not included in a responsive pleading or a motion made pursuant to Rule 55.27. Insofar as Appellants' present claim could be considered a challenge to Harrison's capacity to sue, that claim has been waived. *See Unifund CCR Ptrs. v. Kinnamon*, 384 S.W.3d 703, 707-710 (Mo. App. 2012); *See also* Section 347.069, RSMO 2000, which discusses improper parties to proceedings by or against a limited liability company.

14

Appellants allege no personal harm from this aspect of the court's judgment and fail to otherwise show how altering the court's judgment in the manner they request would bring them any relief. Rocking is the only party that could, in theory, be harmed by the court's judgment awarding immediate possessory right to the trucks and trailers, as well as damages and lost income, to both Rocking and Rocking's sole member, Harrison. We emphasize the theoretical nature of this because, as Rocking's sole member, Harrison is ultimately the only person with legal authority to possess and control Rocking's assets.[6] As Rocking does not contest the court's judgment and Appellants are not aggrieved, point three is dismissed.[7]

**Conclusion**

We conclude, therefore, that the circuit court's judgment for replevin was not against the weight of the evidence as the court could have reasonably believed, based on the evidence, that Harrison was the sole owner of Rocking and that Harrison and Rocking were entitled to possession of the property previously held by Rocking and erroneously transferred by Harrison to HBIC. Further, the circuit court did not err in entering judgment against Fenton and Alderson as individuals in Count I, and judgment for plaintiffs in Count II, because it can be inferred from the pleadings and the evidence that HBIC, Alderson, and Fenton all maintained possession and control of the disputed property. Finally, we find that Appellants have no standing to contest the

---

[6]As the court found in favor of Rocking and Harrison for replevin, the court necessarily disagreed with Fenton's contention that he had an undivided one-half interest in Rocking's assets. This precludes any argument that Appellants might share in any harm that could befall Rocking because of the court's judgment.

[7]An argument could also be made that this claim is moot. "A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *Central Trust and Inv. Co. v. Signalpoint Asset Management*, LLC, 422 S.W.3d 312, 324-325 (Mo. banc 2014) (internal citation and quotation marks omitted). As Harrison is Rocking's sole owner with complete control over its assets, altering the court's judgment to reflect that Rocking, not Rocking and Harrison, are entitled to possession, damages, and lost income would likely have no practical effect.

court's award of damages and lost income to both Rocking and Harrison. We affirm the circuit court's judgment.

_____

Anthony Rex Gabbert, Judge

All concur.